UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DE'SHAUNDA SMITH, *et al.*, *On behalf of herself and all others similarly situated*, <br><br> Plaintiffs, <br><br> *v*. <br><br> FACE 2 RESOURCES CORP., *et al.* <br><br> Defendants. | CASE NO. 1:21-CV-01031 <br><br> MAGISTRATE JUDGE THOMAS M. PARKER |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**

The Parties respectfully and jointly move the Court to approve the proposed Settlement reached by the Parties and memorialized in the *Joint Stipulation of Settlement and Release* ("Settlement Agreement") attached as Exhibit 1. The Settlement seeks to resolve all wage-and-hour claims of the Named Plaintiff and other Settlement Opt-In Plaintiffs that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff and other Settlement Opt-In Plaintiffs representing a substantial percentage of the potential value of their claims. The Parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

Exhibit 1:    *Joint Stipulation of Settlement and Release* ("Settlement Agreement");

Exhibit 2:    Proposed Final Order and Judgment Approving Settlement and Dismissing Action;

Exhibit 3: Exhibit A to Settlement Agreement –
Individual Payments Allocation Schedule; and

Exhibit 4: Declaration of Plaintiffs' Counsel.

The attached Memorandum in Support explains the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

Respectfully Submitted,

| | |
|---|---|
| *s/ Ryan A. Winters* | *s/ Matthew K. Seeley (via email consent)* |
| Joseph F. Scott (0029780) | Matthew K. Seeley (0067680) |
| Ryan A. Winters (0086917) | WESTON HURD LLP |
| Kevin M. McDermott II (0090455) | 1300 East 9th Street, Suite 1400 |
| SCOTT & WINTERS LAW FIRM, LLC | Cleveland, OH 44114 |
| The Caxton Building | (216) 241-6602 |
| 812 E. Huron Rd., Suite 490 | (216) 621-8369 (fax) |
| Cleveland, OH 44115 | mseeley@westonhurd.com |
| (216) 912-2221   F: (216) 350-6313 | |
| jscott@ohiowagelawyers.com | *Attorney for Defendants* |
| rwinters@ohiowagelawyers.com | |
| kmcdermott@ohiowagelawyers.com | |

*Counsel for Plaintiffs*

**MEMORANDUM IN SUPPORT**

I. **THE LITIGATION**

    A. **Facts and Procedural History**

Named Plaintiff De'Shaunda Smith filed Case No. 1:21-cv-01031 *on behalf of herself and all others similarly situated* on May 17, 2021 seeking relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01, *et seq*. (ECF No. 1.) Plaintiff's Complaint alleged that Defendants Face 2 Resources Corporation and Osaro Igho-Osagie violated the FLSA and Ohio law by failing to pay overtime compensation to Plaintiff Smith and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek. (*Id.* at ¶¶ 19-28.) Plaintiff's Complaint also brought an individual retaliation claim pertaining to Defendants' alleged unlawful dismissal of Plaintiff. (*Id.* at ¶¶ 48-59.) Defendants filed an Answer, denying all liability under any of Plaintiff's claims. (*See* ECF No. 8.) Plaintiff's Complaint (ECF No. 1) sets forth three separate counts as follows:

- Count I— a claim for violation of the FLSA's wage provisions, 29 U.S.C. §§ 201-219;

- Count II— a claim for violation of Ohio's wage laws, Ohio Rev. Code §§ 4111.01, *et seq.*; and

- Count III— a individual retaliation claim brought on behalf of Plaintiff De'Shaunda Smith pursuant to 29 U.S.C. § 215(a)(3).

Defendant Face 2 Resources Corporation is a home health agency providing direct service providers ("DSPs") to, among other things, help clients maintain or regain their independence, continue living healthy and maintain personal care, as well as allow for regular socialization with family, friends and peers. Plaintiff De'Shaunda Smith was employed by

1

Defendants from February 16, 2018 to approximately April 12, 2021 as a DSP. Defendants utilize DSP and employees with similar job titles, including Plaintiff Smith, to provide these home health services. As alleged in the Complaint, Defendants Face 2 Resources and Osaro Igho-Osagie violated the FLSA and Ohio law by failing to pay overtime compensation to Plaintiff and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek.

Obtaining the alleged unpaid wages at trial or through dispositive motion, as described above, would be no easy task. In particular, Plaintiff would need to: (1) convince the Court that the overtime claims should proceed to trial on a collective basis under 29 U.S.C. § 216(b); (2) prove that each covered employee performed unpaid overtime hours each workweek, in addition to the amounts of these times; and (3) defeat Defendants' legal and factual arguments that any violation was not willful and that Defendants are entitled to a good faith defense.

### B. Conditional Class Certification

The parties filed their Joint Stipulation for Conditional Certification Pursuant to 29 U.S.C. § 216(b) on August 4, 2021. (ECF No. 12.) The Court issued its Order granting Conditional Certification on August 12, 2021. (ECF No. 15.) Notice was mailed and emailed to putative class members, and the opt-in period ended sixty (60) days after the date the Notice and Opt-In Consent Form were mailed. Those putative class members who opted in to Case No 1:21-cv-01031 were joined as party Opt-In Plaintiffs.

### C. Discovery and Document Analysis

The Parties engaged in discovery, and Defendants produced wage-and-hour data and documents necessary to fully and fairly evaluate the claims of the Plaintiffs. Prior to engaging in settlement negotiations, Defendants provided Plaintiff wage and hour data in the form of

spreadsheets as PDF documents containing payroll and payment information for all covered employees. Plaintiffs' Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. Based on Defendants' records, in a best-case scenario, Plaintiff and other DSP Opt-In Plaintiff employees were entitled to a total of $20,977.70 in back overtime wages. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## II.     THE NEGOTIATIONS

Settlement negotiations were contentious. In advance of negotiations, Plaintiff prepared a comprehensive damages analysis. The Parties' subsequent negotiations resulted in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel. (*See* Decl. of Counsel, Ex. 4.) Formal settlement documents, including the Settlement Agreement attached as Exhibit 1, were later prepared and executed for approval by the Court.

The result in this case was exemplary. As a result of this negotiated settlement, after the payment of attorneys' fees and costs, Plaintiff and other Settlement Opt-In Plaintiffs will receive a global approximately 125% of their alleged unpaid overtime damages. (*See* Section IV below.) Without question this settlement represents a fair, just, and reasonable resolution of this case.

## III.    THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A.     The Scope of Settlement

3

If approved by the Court, the proposed Settlement will resolve deeply disputed claims between the Parties. The Settlement will resolve wage-and-hour claims of the Named Plaintiff and all other Settlement Opt-In Plaintiffs, as well as the individual retaliation claim of Plaintiff Smith. As highlighted below, Plaintiffs' Counsel and Defendants' Counsel believe that Settlement is appropriate because the Released Claims are being compromised without the need to establish the elements of those claims on which liability turns, in addition to providing a substantial recovery to Named Plaintiff and all other Settlement Opt-In Plaintiffs in light of the procedural and substantive encumbrances underscored by Defendants. Named Plaintiff and Plaintiffs' Counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. (*See* Exs. 1, 4.) Named Plaintiff and Plaintiffs' Counsel, however, also recognize the risk and expense of trying and, if necessary, appealing this action, and believe that the Settlement confers substantial benefits upon the Plaintiffs. (*Id*.)

**B.     The Settlement Payments and Distributions**

**Total Settlement Amount.** Defendants have agreed to pay the maximum settlement amount of $60,000.00 as set forth in the Settlement Agreement. (Ex. 1 at ¶ 13.) That sum will be used to make settlement payments to Named Plaintiff and Opt-In Plaintiffs which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by the Named Plaintiff and Opt-In Plaintiffs; (2) attorneys' fees and reimbursed litigation expenses; (3) payment pertaining to Named Plaintiff's individual retaliation claim; and (4) any other obligations of Defendants under the Settlement Agreement.

**Payments to Settlement Opt-In Plaintiffs.** From the total settlement amount, the maximum amount of $30,178.50 will be paid to the Settlement Opt-In Plaintiffs, including the Named Plaintiff, in consideration for release of their overtime-related claims. If approved by the

4

Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and other Opt-In Plaintiffs representing a substantial percentage of the potential value of their claims, and achieves an excellent result for the covered workers. Each of the nine covered workers will receive approximately 125% of their total overtime back wages. Inherent in the proposed distribution method in which Settlement Opt-In Plaintiffs are distributed settlement payments based proportionally on each Plaintiffs' calculated overtime damages during the relevant period, the settlement proposal treats Settlement Opt-In Plaintiffs equitably relative to each other.[1] Named Plaintiff Smith, as a Settlement Opt-In Plaintiff, will participate in the recovery under the same procedure applicable to other covered workers.

**Retaliation Claim.** The proposed Settlement provides for an individual payment pertaining to De'Shaunda Smith's individual retaliation claim in the amount of $10,000. This payment is commensurate with her allegations, denied by Defendants, that her hours were severely cut when she complained about Defendants' overtime pay policies at the center of this lawsuit. Ultimately, she was able to find new employment.

**Attorneys' Fees and Cost Reimbursements.** From the Total Settlement Amount, Plaintiffs' Counsel will receive attorneys' fees and costs in the total amount of $19,821.50. After reductions for costs and litigation expenses in the total amount of $481.84, the attorney fee recovery will equal $19,339.66. (*See, e.g.,* Ex. 4, Decl. of R. Winters at ¶¶ 28, 35.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel. (*See generally id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel will not be paid by Defendants until after the final approval order is issued

---

[1] One exception are the payments to Opt-In Plaintiffs Constance Okoro and Shanelle Hicks. Based on the wage and hour records provided in discovery, Mss. Okoro and Hicks, each part-time, short-term employees who each worked overtime in one pay period, each had overtime damages in the amount of less than $5.00. The settlement provides each of these employees the minimum total settlement payment amount of $20.00.

5

by the Court, contemporaneously along with the settlement payments to Named Plaintiff and other Settlement Opt-In Plaintiffs as installment payments issued on a *pro rata* basis. (*See* Ex. 1, Settlement Agreement at ¶¶ 13-15, 17; Ex. 3, Allocation Schedule.)

## IV.  THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown below, Court approval here is strongly supported by established authority.

### A.  The Seven-Factor Standard is Satisfied

This Settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b). The court presiding over an FLSA action may approve a proposed settlement of the action under § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2-3 (June 16, 2008), fn. 1 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute")); *Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS 182622, at *2 (Oct. 22, 2019); *Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017) (quoting *Kritzer v. Safelite Solutions, LLC,* S.D.Ohio No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (May 30, 2012)); *Osman v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D.Ohio May 4, 2018).

In *Hill*, 2019 U.S. Dist. LEXIS 182622, at *2, a court within this district and division used seven factors to evaluate whether the proposed settlement was fair and reasonable for purposes of the FLSA, 29 U.S.C. § 216(b):

> (1) [T]he existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the

6

>proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

(Citing *Snook v. Valley OB-GYN Clinic, P.C.,* E.D.Mich. No. 14-cv-12302, 2014 U.S. Dist. LEXIS 177517, at *3 (Dec. 29, 2014), citing *Dees v. Hydradry, Inc*., 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). *See also Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) ("the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement.") (citing *Crawford v. Lexington-Fayette Urban Cty. Govt*., E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, 2008 WL 4724499, at *3 (Oct. 23, 2008) (further citation omitted)). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017) (quoting *Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at * 3 (June 24, 2011)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *14 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008), citing *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-1206 (6th Cir.1992)).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendants' liability, which Defendants vehemently deny, but also each employee's overtime damages. Wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely

7

duration of continued litigation favor approval. The Parties engaged in substantial document review, comprehensive payroll and wage and hour records analysis, and due diligence prior to arduous negotiations, and the issues were well understood – as noted above, the Parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The settlement was reached as a result of arms-length negotiation between Parties represented by competent counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *4-5. As noted above, each of the covered workers will receive approximately 125% of their calculated overtime back wages. (*See* Exs. 1, 4.) Inherent in the proposed distribution method in which Plaintiffs are distributed settlement payments based proportionally on each Plaintiff's calculated overtime damages during the relevant period, the settlement proposal treats Plaintiffs equitably relative to each other. Named Plaintiff Smith, as a Settlement Opt-In Plaintiff, will participate in the overtime wage portion of the recovery under the same procedure applicable to other Settlement Opt-In Plaintiffs.

In addition, of particular contention in this specific case is Defendants' ability to pay the full amount of a greater judgment, plus the costs of ongoing litigation. The settlement reached here is a "good result in light of the concerns over collectability in this case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, S.D.Ohio No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *12 (Nov. 25, 2019). Because the fairness of this compromise settlement is further predicated on Defendants inability to pay any greater amount, not solely a bona fide dispute as to underlying liability, Defendants are willing to provide additional financial records showing Defendants' ability to pay a judgment for in camera review, as may be required by the Court for approval. *Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1026–27 (W.D. Tenn. 2016) ("*legal*

8

issues (such as the extent of FLSA coverage), a settlement agreement reducing or waiving [FLSA] damages is invalid") (quoting *D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116, 66 S.Ct. 925, 90 L.Ed. 1114 (1946)). *See also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203 (2d Cir. 2015) (providing "employees may not waive the right to recover liquidated damages due under the Fair Labor Standards Act (FLSA)"). Here, as noted in *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *13, the settlement here "is a good result for the [Plaintiffs] and appropriately accounts for the risk of going forward with the litigation." Ultimately, the outcome of litigating the case, and attempting a further recovery, would be uncertain, and the risks of continued litigation would be high. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Given the uncertainties surrounding trial, and potential collection efforts, in this matter, the certainty and finality of a settlement that will substantially benefit the Plaintiffs is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and potentially futile collection efforts, and make substantial payments available to the Settlement Opt-In Plaintiffs under an installment payment term that Defendants have represented they can satisfy.

    **B. The Settlement Payments Are Fair, Reasonable, and Adequate**

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)).

9

In the present case, the Parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood – as noted above, the Parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. Each of the covered workers will receive approximately 125% of their calculated overtime back wages. This method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based exclusively on the actual amounts of the Plaintiffs' damages.

### C. Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10. The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)). The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages" *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc.*, 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6 (6th Cir.1985)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 *(May 30, 2012)* (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); quoting *Blum v. Stenson*, 465 U.S. 886, 897

10

(1984)); *Hill*, 2019 U.S. Dist. LEXIS 182622, at *3. "[I]n determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc.*, S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23, 2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)).

Here, Plaintiffs' Counsel seeks approval under the percentage-of-the-fund method, which has been approved by the Sixth Circuit. *See Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993).  "Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs." *Osman,* 2018 U.S. Dist. LEXIS 78222, at *6 (citing *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees).

As noted in *Osman*, one-third of the common fund "is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Rotuna*, 2010 WL 2490989, at *8; *Dillworth*, 2009 U.S. Dist. LEXIS 76947; *Jackson v. Papa John's*, Case No. 1:08-CV-2791, 2009 U.S. Dist. LEXIS 140578 (N.D. Ohio 2009); *Fincham v. Nestle Prepared Foods Co*., 1:08-CV-73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus*., Case No. 1:07-CV-1110 (N.D. Ohio 2007)). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encourages early settlement before substantial fees and expenses have accumulated. *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19.

"The lodestar figure is used to confirm the reasonableness of the percentage-of-the-fund award." *Osman,* 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). A percentage-of-the-fund attorneys' fee award is reasonable when it amounts to a multiplier of approximately 2.5. *See, e.g., Castillo v. Morales, Inc.,* No. 2:12-CV-650, 2015 WL 13021899, 2015 U.S. Dist. LEXIS 192936, at *22 (S.D. Ohio Dec. 22, 2015) ("Class Counsel's cumulative lodestar of $263,479.00, compared to its requested fee of $660,000.00, yields a lodestar multiplier of approximately 2.5. This is typical of lodestar multipliers in similar cases."); *Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *18 (July 11, 2014) ("Counsel's cumulative lodestar of $512,885, compared to its requested fee of $1,320,000, yields a lodestar multiplier of 2.57, which is consistent with other risk multipliers...") (citations omitted); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *7 (citing *Thorn v. Bob Evans Farms, Inc.*, No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207, 2016 WL 8140448, at *3 (S.D. Ohio Feb. 26, 2016) ("approving 32.92 percent of the common fund when that number amounted to a 2.01 multiplier of plaintiff's counsel's loadstar attorney's fees").

Currently (as of August 3, 2022), Plaintiffs' counsel collectively have approximately 81.9 hours in this case, a fee lodestar of $31,800.00. The breakdown is as follows: for Scott & Winters Law Firm, LLC, Joseph F. Scott has approximately 5 hours at $475 per hour; Ryan A. Winters has approximately 23.5 hours at $400 per hour; and Kevin M. McDermott II has approximately 53.4 hours at $375 per hour (Ex. 4, Decl. of R. Winters at ¶ 40) – for a total of $31,800.00. In addition, the $19,821.50 settlement payment for fees and costs includes $481.84 in reimbursable out-of-pocket expenses incurred in this case by Plaintiffs' Counsel. These

12

expenses constitute costs that were reasonably necessary to prosecute the action. (*See id*. at ¶ 44.)

The resulting settlement negotiated by Plaintiffs' Counsel ensures substantial payments to the Named Plaintiff and Opt-In Plaintiffs – approximately 125% of their calculated wage damages as noted above. As of August 3, 2022, at a combined fee lodestar of $31,800.00, the requested attorney fee of $19,339.66 ($19,821.50 fee/costs allocation - $481.84 in costs) results in a "negative multiplier" of 0.61 if the Court approves the requested settlement payment as to attorneys' fees. (*See* Ex. 4 ¶ 41.) Such a negative multiplier supports that the fee sought is reasonable. *Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145, at *3-4 (Dec. 9, 2019); *Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)).

In other words, while Named Plaintiff and Opt-In Plaintiffs will recover approximately 125% of their calculated wage damages, Plaintiffs' Counsel has agreed to recover a significant reduction – approximately 61% – of their lodestar attorney fees incurred to date. Moreover, Plaintiff's Counsel's lodestar has not been adjusted to account for the time Plaintiff's Counsel will spend after August 3, 2022 finalizing this motion for approval and final negotiations of the Settlement Agreement, as well as additional time counsel will expend fulfilling the obligations in the Settlement Agreement, monitoring the administration of the Settlement, responding to questions and inquiries from the collective action members, and continuing representation of Plaintiffs through the conclusion of this matter and disbursement of settlement proceeds. Plaintiffs' Counsel anticipates that they will have spent, after August 3, 2022, an additional 4 –

13

10 attorney hours through this matter's conclusion, which will further decrease the lodestar calculation of Plaintiff's Counsel's attorney time. The lodestar calculation in this matter unequivocally supports the reasonableness of the fee request.

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V. CONCLUSION

For the reasons addressed above, the Parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

Respectfully Submitted,

*s/ Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 E. Huron Rd., Suite 490
Cleveland, OH 44115
(216) 912-2221   F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Counsel for Plaintiffs*

*s/ Matthew K. Seeley     (via email consent)*
Matthew K. Seeley (0067680)
WESTON HURD LLP
1300 East 9th Street, Suite 1400
Cleveland, OH 44114
(216) 241-6602
(216) 621-8369 (fax)
mseeley@westonhurd.com

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all Parties indicated on the electronic filing receipt.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)

**CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION REQUIREMENTS**

I, undersigned counsel, state that this matter has been assigned to the standard track, and I hereby certify that the memorandum contained herein complies with the page limitations established by Local Rule 7.1(f) as a dispositive motion "which, if granted, would result in the entry of judgment or dismissal, or would dispose of any claims or defenses, or would terminate the litigation." *See* N.D. Ohio Local Rule 16.1(b)(5).

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)
